IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re Application of EWE GASSPEICHER GMBH, | ) ) ) ) ) | Civ. No. 19-mc-109-RGA |

**MEMORANDUM**

On May 13, 2019, I granted the *ex parte* application of EWE Gasspeicher GmbH and issued an order pursuant to 28 U.S.C. § 1782 directing Halliburton Company to provide discovery for use in a private commercial arbitration in Germany. (D.I. 16). The order was without prejudice to Halliburton's right to move to vacate or quash. (*Id.*). Halliburton has now moved to vacate the order and quash the subpoenas. (D.I. 26).

In addition, during the course of this proceeding, the parties have filed numerous documents under seal. But the strong presumption in favor of public access to judicial proceedings "does not permit the routine closing of judicial records to the public." *In re Avandia Mktg., Sales Practices & Prod. Liability Litig.*, 924 F.3d 662, 670 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)). Accordingly, on July 10, 2019, I issued an Order to Show Cause as to why all of the filings in this case should not be unsealed. (D.I. 45). The parties, however, each filed a response that failed to apply the proper standard. (D.I. 61-2; D.I. 64).

For the foregoing reasons, I will grant the motion to vacate. In addition, the parties have until March 31, 2020, to show cause why, per the common law right of access, all of the filings in this case should not be unsealed.

1

## I. BACKGROUND

EWE Gasspeicher operates a large number of gas storage facilities.[1] (D.I. 3 at 4). Two German entities, Halliburton Holding Germany GmbH & Co. KG and Halliburton Company Germany GmbH, manufactured and supplied safety valves used in some of EWE Gasspeicher's storage facilities. *Id.* EWE Gasspeicher believes that the safety valves are defective. To resolve the dispute, EWE Gasspeicher initiated contractually-mandated arbitration proceedings in Germany under the DIS Rules of Arbitration 2018. (*Id.* at 6).

Respondent Halliburton Company is the ultimate parent company of the two German Halliburton entities. EWE Gasspeicher believes Halliburton may have information relevant to the alleged defect and, on May 13, 2019, filed an application pursuant to 28 U.S.C. § 1782 to obtain discovery from Halliburton to use in the arbitration. (D.I. 16).

## II. MOTION TO VACATE

The district court has authority to grant an application under 28 U.S.C. § 1782 when three statutory conditions are met: (1) the person from whom discovery is sought "resides or is found" within the district; (2) the discovery is "for use in a proceeding before a foreign or international tribunal"; and (3) the application is made by an "interested person." 28 U.S.C. § 1782(a); *see also In re Bayer AG*, 146 F.3d 188, 193 (3d Cir. 1998). If the statutory conditions are satisfied, the decision to grant an application is within the district court's discretion. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). The following factors guide the court's exercise of discretion: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal and the character of the proceedings; (3) whether the application conceals an attempt to circumvent foreign proof-gathering restrictions or other

---

[1] According to Google Translate, "gasspeicher" means "gas storage" in German.

2

policies; and (4) whether the discovery sought is unduly intrusive or burdensome. *Id.* at 264–65. Halliburton argues that EWE Gasspeicher has not satisfied the second statutory condition—use in a "foreign tribunal"—and that the discretionary factors weigh against allowing the order to stand.

Halliburton asserts that a private commercial arbitration is not a "tribunal" within the meaning of § 1782. (D.I. 27 at 6). The Third Circuit Court of Appeals has not yet addressed this issue, but a large number of other federal courts have, and their decisions appear to be evenly split on the issue. *See, e.g., In re Application to Obtain Discovery for Use in Foreign Proceedings*, 939 F.3d 710, 715 (6th Cir. 2019) (holding that § 1782 permits discovery for use in a private commercial arbitration); *El Paso Corp. v. La Comision Ejecutiva Hidroelectrica Del Rio Lempa*, 341 F. App'x 31, 33 (5th Cir. 2009) (reaffirming decision in *Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880 (5th Cir.1999) that a private international arbitration is not a "tribunal" within the meaning of § 1782).[2] Several of these cases have exhaustively covered the historical

---

[2] For more cases holding that a private arbitration qualifies as a "tribunal," see *In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 370 (S.D.N.Y. 2019); *Islamic Republic of Pakistan v. Arnold & Porter Kaye Scholer LLP*, 2019 WL 1559433, at *7 (D.D.C. Apr. 10, 2019); *In re Pola Mar. Ltd.*, 2018 WL 1787181, at *2 (S.D. Ga. Apr. 13, 2018); *Kleimar N.V. v. Benxi Iron & Steel Am., Ltd.*, 2017 WL 3386115, at *6 (N.D. Ill. Aug. 7, 2017); *In re Owl Shipping, LLC*, 2014 WL 5320192, at *2 (D.N.J. Oct. 17, 2014); *In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 240 (D. Mass. 2008); *Comision Ejecutiva Hidroelectrica del Rio Lempa*, 2008 WL 4809035, at *1 (D. Del. Oct. 14, 2008); *In re Oxus Gold PLC*, 2007 WL 1037387, at *5 (D.N.J. Apr. 2, 2007); *In re Roz Trading Ltd.*, 469 F. Supp. 2d 1221, 1226 (N.D. Ga. 2006); *In re Hallmark Capital Corp.*, 534 F. Supp. 2d 951, 952 (D. Minn. 2001).

For cases representing the opposite view, see *Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880, 881 (5th Cir. 1999); *Nat'l Broad. Co. v. Bear Stearns & Co.*, 165 F.3d 184, 185 (2d Cir. 1999); *In re Hanwei Guo*, 2019 WL 917076, at *2 (S.D.N.Y. Feb. 25, 2019); *In re Servotronics, Inc.*, 2018 WL 5810109, at *2 (D.S.C. Nov. 6, 2018); *Helen Trading S.A. v. McQuilling Partners Inc.*, 2018 WL 7252925, at *3 (S.D. Tex. Feb. 9, 2018); *In re Gov't of Lao People's Democratic Republic*, 2016 WL 1389764, at *4 (D. N. Mar. I. Apr. 7, 2016); *In re Grupo Unidos Por El Canal S.A.*, 2015 WL 1815251, at *8 (N.D. Cal. Apr. 21, 2015); *In re Grupo Unidos Por El Canal, S.A.*, 2015 WL 1810135, at *8 (D. Colo. Apr. 17, 2015); *In re Dubey*, 949 F. Supp. 2d 990, 993 (C.D. Cal. 2013); *In re Rhodianyl S.A.S.*, 2011 U.S. Dist. LEXIS 72918, at *2 (D. Kan. Mar. 25, 2011); *In re Finserve Grp. Ltd.*, 2011 WL 5024264, at *2 (D.S.C. Oct. 20, 2011);

developments of § 1782, including its amendments, legislative history, and diverging legal interpretation. Therefore, I need not repeat what has been said before. While there are reasonable arguments on both sides of the debate, I hold that a private commercial arbitration is not a "tribunal" within the meaning of § 1782.

In 1964, pursuant to the recommendations of the Commission on International Rules of Judicial Procedure (the "Rules Commission"), Congress completely revised 28 U.S.C. § 1782(a). *See* Act of Oct. 3, Pub.L. 88–619, § 9, 78 Stat. 997. Relevant here, Congress deleted the words "in any judicial proceeding pending in any court in a foreign country," and replaced them with the phrase "in a proceeding in a foreign or international tribunal." *Intel Corp.*, 542 U.S. at 249.

In *Intel Corp,* the United States Supreme Court had to consider the import of the 1964 revisions in deciding whether the Directorate–General for Competition of the Commission of the European Union was a "tribunal" within the meaning of § 1782. 542 U.S. at 257-58. The European Commission is the executive and administrative organ of the European Union.[3] *Id.* at 250. The Directorate–General for Competition is the department within the European Commission primarily responsible for investigating and enforcing the European Union's antitrust law. *Id.* at 250, 254.

Ultimately, the Supreme Court noted that Rules Commission was tasked with recommending procedural revisions "for the rendering of assistance to foreign courts *and quasi-judicial agencies*." *Id.* at 257-58 (quoting § 2, 72 Stat. 1743) (emphasis in original). Thus, Congress understood the 1964 amendment to "provide the possibility of U.S. judicial assistance in connection with administrative and quasi-judicial proceedings abroad." *Id.* at 258 (alterations in

---

*In re Norfolk S. Corp.*, 626 F. Supp. 2d 882, 885 (N.D. Ill. 2009); *In re Operadora DB Mexico, S.A. de C.V.*, 2009 WL 2423138, at *12 (M.D. Fla. Aug. 4, 2009).

[3] *Intel* refers to the "European Communities," but the European Communities was replaced by the "European Union" in 1993 when the Maastricht Treaty went into effect.

4

original omitted). Because the Directorate-General conducted a quasi-judicial proceeding on behalf of the European Union's executive branch, and its decisions were subject to judicial review, the Supreme Court concluded that it had "no warrant to exclude the European Commission ... from § 1782(a)'s ambit." *Id.*

Here, the arbitration proceeding arising from a private commercial contract is not before a foreign court or a quasi-judicial agency. In addition, the merit of the arbitration decision is not subject to judicial review. (D.I. 28 at ¶ 8). Accordingly, the reasons relied on *Intel* for finding that § 1782 extended to the Directorate-General are not present here. In addition, I am particularly concerned with the lack of judicial review or any proceeding before a public body. Therefore, I find that a private commercial arbitration is not a "tribunal" within the meaning of § 1782.

Even if a private commercial arbitration were a "tribunal" within the meaning of § 1782, I might still vacate the order in the exercise of my discretion under the *Intel* factors. Specifically, I note the third factor—"an attempt to circumvent foreign proof-gathering restrictions."

EWE Gasspeicher filed its application requesting a § 1782 order on April 26, 2019, which was four months before the August 30, 2019 deadline for the parties to submit their document requests in the arbitration. (D.I. 28-2, Ex. G, Appx. 2). In the same procedural order setting forth the discovery deadlines, the arbitration panel stated that "it will set strict standards with regards to the number of documents requested and their relevance." (*Id.*, Ex. G at B.IV.15).

In addition, EWE Gasspeicher relies on speculative evidence to claim that the requested discovery is in Halliburton's custody or control. Specifically, EWE Gasspeicher relies on the German entities' explanation for requesting an extension to the deadline to submit defenses and a description in Halliburton's financial statements of the relationship between the different corporate entities in the Halliburton family. (*See* D.I. 4 ¶¶ 19-20; D.I. 28 ¶ 12 (stating that the German

5

entities need to confer with Halliburton regarding the relevant issues); *Id*. at ¶ 15 (stating that the German entities have the contractual right to access any existing technology within the global company at any time)). But neither of these statements clearly indicate that the requested discovery resides with Halliburton.

Given the timing of EWE Gasspeicher's application, the statements of the arbitration panel, and the evidence on which EWE Gasspeicher relies to claim the documents are in Halliburton's custody and control, it seems that an order granting the application could aid an attempt to circumvent foreign proof-gathering restrictions or other policies. But, in light of my decision that the German private arbitration is not a "tribunal," I need not resolve the *Intel* analysis.

Halliburton's motion to vacate the § 1782 order is granted.

## III. ORDER TO SHOW CAUSE

The standard for determining whether documents are entitled to confidential protection depends on the circumstances. *In re Avandia Mktg.*, 924 F.3d at 670. For requests to preserve the confidentiality of discovery materials pursuant to a protective order, the Court applies the factors set forth in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 783–92 (3d Cir. 1994). *See In re Avandia Mktg.*, 924 F.3d at 670. When, however, the parties file those discovery materials on the court's docket under seal, they become "judicial records" subject to the more rigorous common law right of access. *Id*. at 672. Finally, the First Amendment right of public access attaches to civil trials. *Id*.

Because the documents filed on the court docket are judicial records, they are subject to the common law right of access. *Id*. In responding to the July 10, 2019 Order to Show Cause, however, the parties applied the *Pansy* factors. (*See* D.I. 61-2; D.I. 64). In *In re Avandia Mktg.*, the Third Circuit reversed the district court for exactly that error—applying the *Pansy* factors to

determine whether documents may be filed under seal. 924 F.3d at 675. Applying the correct standard here shows that most, if not all, of the materials filed under seal are not entitled to confidentiality.

"The common law presumes that the public has a right of access to ... judicial proceedings and records." *Id.* at 672. The party (or parties) seeking to overcome the presumption of access bears the burden of showing that: (1) "the material is the kind of information that courts will protect," (2) "disclosure will work a clearly defined and serious injury to the party seeking closure," and (3) the "interest in secrecy outweighs the presumption." *Id.* "In delineating the injury to be prevented, specificity is essential." *Id.* at 673 (quoting *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001)). "Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *Id.*; *see also id.* at 676 ("[V]ague assertions that the transcript contains secretive business information, and that disclosure would render it at a tactical disadvantage" do not overcome the strong presumption in favor of public access) (alterations in original omitted) (quoting *LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 221–22 (3d Cir. 2011)). Finally, to determine whether a party has overcome the presumption of public access, the district court must "conduct a document-by-document review" of the contents of the challenged documents. *In re Avandia Mktg.*, 924 F.3d at 673 (alterations in original omitted) (quoting *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 167 (3d Cir. 1993)).

Here, the volume of materials filed under seal—105 documents totaling 1,551 pages—and the lack of an efficient way to determine what exactly has been redacted, has not made the Court's task easy.[4] Nevertheless, it is readily apparent that certain redacted material cannot meet the

---

[4] At the moment, the only way to determine what has been redacted is to painstakingly compare a hard copy original to an electronic copy of the redacted document and track the redacted material by highlighting on the original what has been redacted.

standard laid out by the Third Circuit in *Avandia*. For example, in several documents, such as the *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 (D.I. 2), EWE Gasspeicher has redacted the name of the respondent, Halliburton, and the name of one of its declarants, Dr. Daniel Schnabl, even though both of those names are publicly displayed on the court docket itself. (*See, e.g.*, D.I. 17 (docket entry labeled "Notice of Appearance by David C. McBride on behalf of Halliburton Company"); D.I. 4 (docket entry labeled "Declaration of Dr. Daniel Schnabl"). Indeed, EWE Gasspeicher repeatedly redacted "Declaration of Dr. Daniel Schnabl," even though, again, the name of that document can be seen on the public court docket. (*See* D.I. 2 at 3; D.I. 3 at 1 n.3)).

In addition, generic labels signifying the very existence of the arbitration also do not meet the *Avandia* standard. (*See, e.g.*, D.I. 38 at 1 (redacting the words "Arbitration" and "Response"); D.I. 44 at 1 (redacting the words "the Panel's decision"). Similarly, information summarizing or describing the arbitration's procedural history is not the type of information that courts typically protect. (*See, e.g.*, D.I. 66 (redacting "on July 10, 2019, the German Entities submitted an Application for Change of the Calendar of Proceedings ....")). Finally, portions of briefs, motions, or notices that quote materials filed in the arbitration are not *per se* entitled to confidentiality (even if the underlying arbitration document should be kept confidential in its entirety) unless a party can show that the quoted material by itself meets the *Avandia* standard. Certain quotes of the arbitration material are simply too benign to warrant a categorical rule. (*See, e.g.*, D.I. 94 at 2-3 (redacting quote from an Arbitration decision that "the Arbitration Court expects the parties to the arbitration to comply more closely with the Procedural Rules and Orders issued by the Arbitration Court in the future and reserves the right to disregard submissions that are not in accordance with these rules and orders")).

8

Ultimately, the parties have contractually agreed to resolve their differences via an arbitration that keeps confidential "the existence of the arbitration, the names of the parties, the nature of the claims, the names of any witnesses or experts, any procedural orders or awards, and any evidence." (D.I. 1 ¶ 4). But the parties have sought assistance with those arbitration proceedings in this Court, which is not bound by the same confidentiality standards.

Despite my misgivings, there remains a remote possibility that certain information does meet the *Avandia* standard. (*See*, *e.g.*, D.I. 3 at 5 (discussing how safety valves are held in place and the materials used in their construction)). Because the parties did not apply the correct legal standard in responding to the Order to Show Cause, I am reluctant to order that all the filings in the case be unsealed without giving the parties one more opportunity to address the issue. Accordingly, the parties have until March 31, 2020 to show cause as to why all of the filings in this case should not be unsealed. If a party does seek to maintain the seal on any of the documents in the case, that party is required to submit its proposed redacted version with the redacted portions highlighted in yellow so that I can easily see what the party is seeking to redact.

## IV. CONCLUSION

For the foregoing reasons, Halliburton's motion to vacate (D.I. 26) is GRANTED. The Order Granting the *Ex Parte* Application for an Order to Obtain Discovery for Use in a Foreign Proceedings (D.I. 16) is VACATED. The parties have until March 31, 2020 to SHOW CAUSE as to why, per the common law right of access as set forth in *In re Avandia Mktg., Sales Practices & Prod. Liability Litig.*, 924 F.3d 662, 670 (3d Cir. 2019), all of the filings in this case should not be unsealed.

Dated: March 17, 2020

_____
UNITED STATES DISTRICT JUDGE

9