**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Application of EWE GASSPEICHER GmbH for an Order, Pursuant to 28 U.S.C. § 1782, to Obtain Discovery for Use in a Foreign Proceeding | C.A. No. 19-mc-109-RGA<br>REDACTED - PUBLIC VERSON |

**HALLIBURTON COMPANY'S**
**<u>RESPONSE TO MARCH 17, 2020 ORDER TO SHOW CAUSE</u>**

OF COUNSEL:

Robert Meadows
KING & SPALDING
1100 Louisiana St. #4000
Houston, TX 77002
(713) 276-7370
RMeadows@kslaw.com

Elizabeth Silbert
KING & SPALDING
1180 Peachtree St. NE
Atlanta, GA 30309
(404) 572-3570
ESilbert@kslaw.com

Dated:  April 14, 2020
Redacted Version: April 21, 2020

YOUNG CONAWAY STARGATT
  & TAYLOR, LLP

David C. McBride (No. 408)
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
dmcbride@ycst.com
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Respondent*
*Halliburton Company*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ...................................................................................................... 1

SUMMARY OF ARGUMENT ................................................................................... 3

LEGAL STANDARDS .............................................................................................. 4

ARGUMENT ............................................................................................................. 6

    I.      THE COMPETITIVE INFORMATION SHOULD REMAIN SEALED ............ 7

        A.    Courts Protect Commercially and/or Competitively Sensitive Information. ....................................................................................... 7

        B.    Disclosure of the Competitive Information Will Result In Specific Harm. ............................................................................................. 7

        C.    The Interest in Keeping the Competitive Information Under Seal Outweighs the Presumption of Public Access. .......................... 9

              1.    *Pansy* Factor 2: Discovery of Competitive Information From Halliburton Is Being Sought for an Improper Purpose.................................................................................... 9

              2.    *Pansy* Factor 3: Disclosure of the Competitive Information Could Cause Embarrassment or Lead to Harassment.................. 10

              3.    *Pansy* Factor 7: The Case Does Not Involve Important Public Issues.................................................................................. 11

    II.     THE ARBITRATION INFORMATION SHOULD REMAIN SEALED .......... 11

        A.    Courts Protect Information Subject to Contractual Obligations from Disclosure, Including Contractual Obligations Relating to Arbitration........................................................................................ 12

        B.    Disclosure of the Arbitration Information Will Cause Harm. .................. 12

        C.    The Interest in Keeping the Arbitration Information Under Seal Outweighs the Presumption of Public Access. .......................... 13

               1.    *Pansy* Factor 2: EWE's Application Is Directed to an Improper Purpose that Should Not Be Compounded By Public Disclosure of Arbitration Information. ............................. 15

              2.    *Pansy* Factor 3: Disclosure of Arbitration Information Could Cause Embarrassment Leading to Competitive or Financial Harm.......................................................................... 16

              3.    *Pansy* Factor 7: The Case Does Not Involve Important Public Issues.................................................................................. 17

i

III.   SHOULD THE DOCUMENTS FALL WITHIN THE CARVE-OUT TO
       THE COMMON LAW PRESUMPTION, THEN HALLIBURTON ALSO
       MEETS ITS BURDEN UNDER RULE 26 .......................................................... 18

CONCLUSION ................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*In Re: Application of Storag Etzel GmbH,*
   C.A. No. 19-mc-209-CFC, D.I. 40 (D. Del. Jan, 23, 2020)......................................................1

*In re Avandia Marketing Sales Practices and Products Liability Litigation,*
   924 F.3d 662 (3d Cir. 2019)............................................................................. *passim*

*Bayer AG v. Betachem, Inc.,*
   173 F.3d 188 (3d Cir. 1999)..........................................................................................19

*In re Cendant Corp.*
   260 F.3d at 198 n.13 ...................................................................................................4

*Dobson v. Milton Hershey School,*
   C.A. No. 16-CV-1958, 2020 WL 290429 (M.D. Pa. Jan. 21, 2020) ..........................5

*Fuhr v. Credit Suisse AG,*
   687 F. App'x 810 (11th Cir. 2017) ..............................................................................19

*In re Ex Parte Glob. Energy Horizons Corp.,*
   647 F. App'x 83 (3d Cir. 2016) ...................................................................................19

*Joint Stock Soc. V. UDV N.A., Inc.,*
   104 F. Supp. 2d 390 (D. Del. 2000)............................................................................5

*LEAP Sys., Inc. v. MoneyTRAX, Inc.,*
   638 F.3d 216 (3d Cir. 2011)........................................................................................17

*Leucadia, Inc. v. Applied Estrusion Techs, Inc.,*
   998 F.2d 157 (3d Cir. 1993)............................................................................. *passim*

*Littlejohn v. BIC Corp.,*
   851 F.2d 673 (3d Cir. 1988)..........................................................................................7

*Mosaid Techs. Inc. v. LSI Corp.,*
   878 F. Supp. 2d 503 (D. Del. July 20, 2012) ........................................8, 11, 12, 14

*Nixon v. Warner Commc'ns., Inc.,*
   435 U.S. 589 (1978).................................................................................................4, 7

*Pansy v. Borough of Stroudsburg,*
   23 F.3d 772 (3d Cir. 1994)............................................................................. *passim*

*In re Peregrine Sys., Inc.*,
  311 B.R. 679 (D. Del. 2004) ............................................................................7

*Publicker Indus., Inc. v. Cohen*,
  733 F.2d 1059 (3d Cir. 1984) .......................................................................7, 12

*Takeda Pharm. U.S.A., Inc. v. Mylan Pharm., Inc.*,
  C.A. No. 19-2216-RGA, 2019 WL 6910264 (D. Del. Dec. 19, 2019) ....................................15

*The Gillette Company v. Dollar Shave Club, Inc., et al*,
  C.A. No. 15-1158-LPS-CJB, Slip Op. (D. Del. Sept. 6, 2017).............................12, 13, 14, 18

*U.S. v. Janssen Therapeutics*,
  795 Fed. Appx. 142 (3d Cir. 2019) .................................................................9

**RULES**

Federal Rule of Civil Procedure Rule 26 ...............................................5, 6, 10, 18, 20

Federal Rule of Civil Procedure Rule 44.1 ....................................................6

## INTRODUCTION

Halliburton Company ("Halliburton") hereby submits its response to the Court's March 17, 2020 Order to Show Cause (D.I. 102) ("Order") and requests that the Court maintain the current status of the filings docketed by Halliburton.[1]  This Court has now confirmed that EWE Gasspeicher GmbH ("EWE") should never have sought discovery from Halliburton pursuant to § 1782 in aid of a private commercial arbitration pending in Germany (the "Arbitration").  Having nevertheless burdened the Court and Halliburton with its improper § 1782 discovery requests, EWE further compounded the burden by putting Halliburton's and the German Entities'[2] confidential information at issue and at risk of public disclosure.  Consequently, Halliburton and the German Entities had no choice but to provide confidential information to this Court to (successfully) defend against the *ex parte* discovery EWE demanded from Halliburton.

It was EWE that chose to drag its disputes with the German Entities before this Court by targeting the █████████████████████.  As another judge in this District correctly observed in a different § 1782 action, the "District Court is not a star chamber." *In Re: Application of Storag Etzel GmbH*, C.A. No. 19-mc-209-CFC, D.I. 40 at 2 (D. Del. Jan, 23, 2020)  But this is

---

[1] In its brief and accompanying Appendix of Detailed Bases for Redactions, Halliburton has addressed its sealed filings to date.  Halliburton has not undertaken a document-by-document analysis of EWE's sealed filings.  The same arguments expressed in this brief apply with equal force to EWE's filings, but Halliburton also reserves the right to respond to EWE's submission as appropriate.  Furthermore, should the Court request it, Halliburton will provide the same document-by-document evaluation of EWE's sealed filings.

[2] Halliburton notes that it is filing this motion on behalf of Halliburton only.  ███████████ ████████████████████████████████████ (the "German Entities") have not appeared in this action, although their confidential information is also implicated.  Halliburton further notes that ████████████████████████████████████████████████████ █████████████████████████████████████████████████████████. *See* D.I. 94. ████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████.

1



not a typical district court proceeding. The German Entities never intended for their disputes to be aired in a court of law, much less a federal court in the U.S., and instead ██████████ ██████████. Indeed, ██████████████████████████████ ████████████████████. By unilaterally opening the dispute to the U.S. courts, EWE[3] has ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████. Accordingly, Halliburton respectfully requests that the Court maintain all redactions to the public versions of its docketed filings and requests the continued maintenance of the related under seal filings.

The confidential information warranting protection falls into two categories, both of which are protected ████████████ and/or the rules governing the Arbitration. The first category is specific information regarding the underlying German Arbitration ("Arbitration Information") that should not have been disclosed by EWE in the first place. The second category is confidential, commercially sensitive information related to certain contracts and the performance thereunder ("Competitive Information"). None of Halliburton's sealed filings containing this information are necessary in order for the public to understand these proceedings or the Court's Order. Moreover, disclosure of such information would compound the injury to the German Entities that began when EWE made its first disclosure of confidential information to this Court.

---

[3] As explained in prior filings (*e.g.*, D.I. 47 ¶ 5), ████████████████████████ ████████████████████████████████████████. Since Halliburton filed its response to the first Order to Show Cause (D.I. 63, Att. A), ████████████████████████████ ████████████████ *See* D.I. 94. ████████ ████████████████████████████████████████ ████████████████████████████████████████

Having such information then made public would multiply the damage to the German Entities and, by implication, Halliburton.

As set forth below, Halliburton submits that its requested redactions comport with governing Third Circuit law regarding the public's right to access as stated in *In re Avandia Marketing Sales Practices and Products Liability Litigation*, 924 F.3d 662 (3d Cir. 2019) and its predecessor cases. In addition, Exhibit A to this brief is a detailed chart providing, document-by-document, the legal support justifying each of the redactions. Accordingly, Halliburton requests the Court maintain its Competitive Information and the Arbitration Information under seal and permit the redactions already applied to the corresponding public versions of such documents.[4]

## SUMMARY OF ARGUMENT

1.     The Competitive Information and Arbitration Information should remain under seal because the unique facts at issue rebut the common law presumption of public access. Halliburton and, by implication, the German Entities would be harmed by the release of the redacted information, and there is little to no countervailing value for the public to have access to the redacted information. The interests rebutting the presumption of public access include the well-established interest of protecting a party from serious injury, which is especially strong here. Just as important is the interest in promoting private, contractually-agreed-upon arbitration, particularly those contracts at issue in the Arbitration ████████████████████████████████████ ████████████ not the public, open forum of a U.S. District Court, ███████████████████ ████████████████████████. As the *Avandia* court recognized, weighing some of the factors articulated in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994), while not dispositive,

---

[4] Should the Court ultimately determine that a more limited subset of redactions are warranted, Halliburton respectfully requests the opportunity to propose redactions consistent with the Court's guidance.

may provide useful guidance when assessing the public's interest.

2.      Should the Court determine that the carve-out recognized by the Third Circuit for discovery motions (and related materials) applies, such that the redaction request should be assessed under the lower "good cause" standard, then Halliburton has met its burden for the same reasons it overcomes the common law presumption of public access.

## LEGAL STANDARDS

When assessing whether documents merit protection from public disclosure, the party seeking to keep documents under seal bears the burden of showing that sealing is warranted. *Avandia*, 924 F.3d at 671-73.  The most stringent standard is the public's right of access to "civil trials" under the First Amendment. *Id.* at 673-74.  Overcoming this presumption requires a "much higher showing" than under the common law right of access. *Id.* at 673 (quoting *In re Cendant Corp.* 260 F.3d at 198 n.13).

Under common law, a presumptive "right of access attaches 'to judicial proceedings and records,'" including "pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith." *Id.* at 672 (quoting *Cendant*, 260 F.3d at 192); *see also Leucadia, Inc. v. Applied Estrusion Techs, Inc.*, 998 F.2d 157, 164 (3d Cir. 1993).

This presumption, however, is not absolute. *Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589, 597-98 (1978); *see also Cendant*, 260 F.3d at 194.  The party seeking to overcome the presumption must show that "(1) 'the material is the kind of information that courts will protect,' (2) 'disclosure will work a clearly defined and serious injury to the party seeking closure,' and (3) the 'interest in secrecy outweighs the presumption.'"  Order at 7 (quoting *Avandia*, 924 F.3d at 672).  "'In delineating the injury to be prevented, specificity is essential.' 'Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient.'" *Id.*  A district court ordering

judicial records to be sealed must articulate "the compelling, countervailing interests to be protected," make "specific findings on the record concerning the effects of disclosure," and "balanc[e] competing interests . . . before the strong presumption of openness can be overcome by the secrecy interests of private litigants." *Avandia*, 924 F.3d at 673.  Moreover, the district court must conduct a "document-by-document" review of the materials.  *Id.* at 673; *see also* Order at 7.

While Rule 26's good cause standard and the *Pansy* factors do not supplant the common law right of access standard, consideration of some of the *Pansy* factors "may provide useful guidance for courts conducting the balancing required by the common law test." *Avandia*, 924 F.3d at 676 ("[T]he district court did not abuse its discretion by weighing some of these factors when considering the public's interest in disclosure.")  A major distinction being, however, that Rule 26 calls for a balancing of private versus public interests, *id.* at 671-72, whereas "the common law right of access begins with a thumb on the scale in favor of openness—the strong presumption of public access." *Id.* at 676.

Finally, the Third Circuit has recognized that the presumptive right of public access does not attach to "discovery motions and their supporting documents." *Leucadia*, 998 F.2d at 165; *see also Dobson v. Milton Hershey School*, C.A. No. 16-CV-1958, 2020 WL 290429, at *6-8 (M.D. Pa. Jan. 21, 2020) (applying same carve-out post-*Avandia*); *Joint Stock Soc. V. UDV N.A., Inc.*, 104 F. Supp. 2d 390, 401 n.8 (D. Del. 2000) (applying same carve-out).  While discovery motions and their supporting documents, once filed with a court, are properly categorized as "judicial records," the Third Circuit appears to still recognize the carve-out articulated in *Leucadia* exempting this subset of judicial records from the common law presumption of public access.[5]  Accordingly,

---

[5] *Compare* the carve-out articulated in *Leucadia* for "discovery motions and their supporting documents," 998 F.2d at 165 (emphasis added), *with* the "presumptive right of public access to

a party seeking to seal such records must instead satisfy the lower Rule 26 good cause standard.[6]

*Leucadia*, 998 F.2d at 165.

## **ARGUMENT**[7]

Based on the Court's finding that the documents are "'judicial records' subject to the more rigorous common law right of access," (Order at 6), there is a strong presumption in favor of public access.[8]  However, a party can overcome this presumption by demonstrating that public disclosure will result in "a clearly defined and serious injury." *Avandia*, 92 F. 3d at 672.  As both this Court and the *Avandia* court noted, the party seeking protection must provide specificity as to the injury alleged, and the district court must undertake a document-by-document review to determine

---

pretrial motions of a nondiscovery nature . . . and the material filed in connection therewith," which in *Leucadia* included motions to dismiss and for a more definite statement, for preliminary injunction, and to preclude evidence, as well as a settlement agreement and exhibits appended to a complaint, *id.* at 159 & n.3 (listing motions and appended material at issue).  *See also infra Section* III.

[6] In applying Rule 26's good cause standard, the Third Circuit has articulated the following non-exhaustive list of factors: (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.  *Pansy*, 23 F.3d at 787-91.

[7] To the extent German law may be relevant to the Order, whether raised by Halliburton or by EWE, Halliburton hereby provides notice pursuant to Fed. R. Civ. P. 44.1.

[8] As the Court noted, "the First Amendment right of public access attaches to civil trials."  (Order at 6).  This proceeding does not involve a civil trial and the Court has already found that the documents are judicial records subject to the common law right of access.  Accordingly, Halliburton does not substantively address the First Amendment standard other than to note that its overriding interests (as detailed herein) support sealing of its Commercial Information and Arbitration Information even under the most stringent standard.  This is particularly true given the underlying discovery nature of § 1782 proceedings, *see infra* Section III, and the fact that this action in particular arose in the context of "a private commercial arbitration [that] is not a 'tribunal' within the meaning of §1782" (Order at 5).

whether proposed redactions meet the common law standard.  (Order at 7).  While the Court pro-

vided an initial assessment of what information may meet the common law standard in its Order,

for the reasons set forth below Halliburton submits that it has met its burden to overcome the

common law presumption such that all Commercial Information and Arbitration Information mer-

its protection from public access.

## I.     THE COMPETITIVE INFORMATION SHOULD REMAIN SEALED

### A.     Courts Protect Commercially and/or Competitively Sensitive Information.

The Competitive Information includes confidential information routinely protected by

courts, such as confidential commercial know-how of the German Entities, terms of the commer-

cial agreements ███████████████████████, and other confidential information regarding

the ███████████████████████.  *See Leucadia,* 998 F.2d at 166 ("Documents

containing trade secrets or other confidential business information may be protected from disclo-

sure."); *Publicker*, 733 F.2d at 1070-71  ("[P]rotection of a party's interest in confidential com-

mercial information" is one exception to the presumption of public access); *Nixon*, 435 U.S. at 598

("courts have refused to permit their files to serve as . . . sources of business information that might

harm a litigant's competitive standing"); *see also Avandia*, 924 F.3d at 679; *Littlejohn v. BIC*

*Corp.*, 851 F.2d 673, 678 (3d Cir. 1988); *In re Peregrine Sys., Inc.*, 311 B.R. 679, 690 n.9 (D. Del.

2004) (same).

### B.     Disclosure of the Competitive Information Will Result In Specific Harm.

Halliburton and the German Entities (the latter being ███████████████████████

███████████████████████ (*see, e.g.*, D.I. 27 at 3-4)) are at risk of clear and

articulable harm by the threatened disclosure of the Competitive Information.  Indeed, the "confi-

dential . . . commercial information" at issue is the "type of information, which, while largely in-

cidental to the substantive issues in this case, could cause real and serious harm . . . if disclosed to

competitors [and] is also the sort of material that courts have frequently redacted." *Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 510 (D. Del. July 20, 2012).[9]



For example, Halliburton's submissions include excerpts from ████████████████████ ████████████████████████████████. *See, e.g.*, D.I. 28 at Ex. B (excerpts of EWE's ████████████████████████), Ex. D (excerpts of ████████████████████); D.I. 34, Ex. D-1 (same); D.I. 42, Ex. A (same). These documents include, *inter alia*, details about ████████████████████████████████████████████ ███████████████████████████, and numerous other confidential details ████████████████████████████. Decl. ¶ 20.[10] If disclosed, each of these details could make it more difficult for the German Entities to attract future customers or to fairly compete with other companies that might use such information against the German Entities. Decl. ¶ 21. This is especially true given that these allegations ██████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████ *Id.* Publication of the details of the relevant agreements ████████████████ ████████████████████could also harm the ability of Halliburton and/or the German Entities to compete on commercial terms or technical requirements in other agreements. *See, e.g.*, D.I. 28, Ex. C (agreement); Decl .¶ 23. Thus, the confidential information should be appropriately sealed as a means of protecting Halliburton's and/or the German Entities' commercial interests.

---

[9] While the *Mosaid* decision considered the issue of redacting a judicial transcript with reference to the "good cause" standard under *Pansy*, *id.* at 507, its analysis remains instructive under *Avandia* as Magistrate Judge Burke acknowledged the presumption of public access under common law that the parties seeking closure would have to rebut. *See id.*

[10] Citations to "Decl." are to the Declaration In Support of Halliburton Company's Response to March 17, 2020 Order to Show Cause, filed contemporaneously herewith.

Moreover, German civil law, such as sections 6 *et seq.* and 23 of the German Act for the Protection of Business Secrets (entry into force on 26 April 2019) as well as section 17 *et seq.* of the German Act Against Unfair Competition (effective until 26 April 2019) (Decl. ¶ 16), may separately obligate EWE to keep confidential Halliburton's and the German Entities' Competitive Information, and the ███████████████████████████████████████████████ ████ (Decl ¶ 7).[11]  Yet EWE's case filings have disclosed that information over and over again. As a result, ██████████████████████████████████████ under German civil or tort law ██████████████████████, including, for example, section 280 (1) of the German Civil Code and sections 823 and 826 of the German Civil Code.  Decl. ¶¶ 12-15.  Thus,

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████

### C.   The Interest in Keeping the Competitive Information Under Seal Outweighs the Presumption of Public Access.

The interest in protecting Halliburton and/or the German Entities from the harm attendant in disclosure is the primary "countervailing consideration" outweighing the presumption of public access to the Competitive Information.  As set forth below, several of the *Pansy* factors "provide useful guidance" on the importance of this interest.  *Avandia,* 924 F.3d at 676.

### 1.   *Pansy* Factor 2: Discovery of Competitive Information From Halliburton Is Being Sought for an Improper Purpose.

Although the *Avandia* court asserted that "a person's motive for inspecting or copying judicial records is irrelevant under the common law right of access," *Avandia* at 676-77, the Third

---

[11] While, as noted, ██████████████████████████████████████████████████ ███████, that does not reduce or undermine the harm to the German Entities and/or Halliburton. Nor does the fact that the ██████████████████████████████████████████ ███████████████████.  *See infra* note 2 & D.I. 94.

Circuit has also instructed district courts to consider whether a motion to unseal material that was subject to the common law presumption of access was a "vehicle for improper purposes." *U.S. v. Janssen Therapeutics*, 795 Fed. Appx. 142, 146 (3d Cir. 2019) (citing *Littlejohn*, 851 F.2d at 678). In any event, EWE's improper purpose is the law of the case and is relevant here in balancing Halliburton's interest in secrecy against the presumption of public access.  EWE itself unsuccessfully sought information for an improper purpose as set forth in Halliburton's motion to vacate EWE's § 1782 application (D.I. 27) ("Motion to Vacate").  *See, e.g.*, D.I. 27 at 5-16.  Indeed, in granting the Motion to Vacate, the Court observed that EWE's very basis for seeking any discovery from Halliburton was "speculative" and, overall, "it seems that an order granting [EWE's] application could aid an attempt to circumvent foreign proof-gathering restrictions or other policies." Order at 5-6.

2.    ***Pansy* Factor 3: Disclosure of the Competitive Information Could Cause Embarrassment or Lead to Harassment.**

The Third Circuit's rejection of the third *Pansy* factor in *Avandia* is distinguishable.  *Avandia*, 924 F.3d at 676.  As set forth above, not only do Halliburton and/or the German Entities' concerns rise above the level of "mere embarrassment," *id.*, but disclosure of the Competitive Information (and Arbitration Information) is also the exact harm that the ███████████████ ███████████████████████████████████████████. Decl ¶ 24.

Disclosure of EWE's claims regarding the ███████████████ (again, ████████ ████████████████████████████████████████████████████████) could lead to further ███████████████████████████████████████████████████████████ ███████████████████████████, even causing financial harm, in contravention of Rule 26(c) of the Federal Rules of Civil Procedure.  *See also Pansy*, 23 F.3d at 787.     Even a

10

partial disclosure could be harmful to the German Entities and Halliburton because details disclosed out of context could provide the public with an incomplete picture.  The German Entities and Halliburton may even determine that they must disclose additional confidential information in order to provide context, resulting in still further harm, embarrassment, and/or harassment.  Decl. ¶ 19.

### 3. *Pansy* Factor 7: The Case Does Not Involve Important Public Issues.

The U.S. public has no interest in the specific terms of the agreements at issue, performance under those agreements, or the details regarding ███████████████████████████████ ████████████  The considerations under this factor might be different if this action were a typical judicial proceeding where some level of public access to the parties' filings is expected, but this action is an ancillary discovery proceeding that—as the Court has recognized—improperly expanded the scope of a ███████████████████.  D.I. 102.  Moreover, the public is able to understand the Court's entirely public ruling without the need to review Halliburton and/or the German Entities' confidential information in underlying filings.  *Mosaid*, 878 F. Supp. 2d 503, 514 (considering the public's interest is "in having access to the basic contours of this dispute").

Not only do the above *Pansy* factors rebut the common law presumption of public access, the ████████████████████████████████ further highlight the harm that has already taken place here and that will continue if the Competitive Information is unsealed.  As explained in detail above, Halliburton and/or the German Entities should not be further prejudiced by EWE's improper attempt to invoke § 1782.  Accordingly, Halliburton submits it has presented sufficient evidence to rebut the public's interest in disclosure under the common law right of access such that Competitive Information should be protected from public disclosure.

## II.   THE ARBITRATION INFORMATION SHOULD REMAIN SEALED

**A.      Courts Protect Information Subject to Contractual Obligations from Disclosure, Including Contractual Obligations Relating to Arbitration.**

The Third Circuit has recognized that contractual obligations of confidentiality are protectable interests.  In *Publicker* it observed that "a binding contractual obligation not to disclose certain information which to the court seems innocuous but newsworthy" may rebut the presumption of public access—in fact, the Third Circuit opined on this issue in the context of the heightened First Amendment right of access standard.  733 F.2d at 1073–74.  There, the Court understood that "unbridled disclosure of the nature of the controversy would deprive the litigant of this right to enforce a legal obligation."  *Id.*

More specifically, Halliburton seeks to maintain under seal Arbitration Information, which the ███████████████████████████ (similar to the information protected from disclosure in the *Gillette* case).  In *Gillette*, Judge Burke permitted redaction of information relating to the state of the parties' pending arbitration proceedings, including the "content of certain determinations that the Arbitral Tribunal has made thus far[.]"  *The Gillette Company v. Dollar Shave Club, Inc., et al*, C.A. No. 15-1158-LPS-CJB, Slip Op. at 4 (D. Del. Sept. 6, 2017).[12]  As further set forth below, the Court should keep sealed the Arbitration Information for the same reasons that the arbitration proceeding at issue in the *Gillette* case warranted protection.

**B.      Disclosure of the Arbitration Information Will Cause Harm.**



EWE has brought the underlying discovery dispute ████████████████████ ████████████. Through arbitration, parties are able to contractually agree to conduct their disputes away from public view.  More specifically, ████████████████████████ ████████████████████. Decl. ¶ 5.  The Arbitration Information includes

---

[12] As in *Mosaid*, *see infra* note 9, Magistrate Judge Burke in *Gillette* relied on the *Pansy* factors in his analysis, but also recognized that the party seeking closure must rebut the presumption of public access.  *Id.* at 2-3.



████████ *Id.* (quoting ███████████████). Due to the nature of this § 1782 action, otherwise

confidential information from or related to the Arbitration is necessarily set forth in Halliburton's

briefs and supporting declarations and comprises a large portion of Halliburton's redactions.

The German Entities have an independent interest in confidentiality ████████████

███████████████████████████████████ Thus, assessing

the public's right to access in the context of this proceeding is particularly challenging because of

this unique factor, which is not usually present in typical U.S. District Court cases. Given these

unique variables not associated with typical confidentiality redactions, it is clear that public dis-

closure of any Arbitration Information would deprive the parties to the Arbitration ████████

████████████████████████████████████████

████████. Instead, information about the dispute in the Arbitration would become available to

any interested third parties, including competitors who might seek to use information from the

Arbitration to the detriment of Halliburton or the German Entities. To the extent there are further

federal court proceedings, disclosure of the Arbitration Information would also harm Halliburton

by forcing it to choose between further defending its valid legal interests (and, by implication,

those of the German Entities), and protecting confidential information and thus risking a failure to

defend its valid legal interests. *See* Decl. ¶ 19. In other words, ████████████████

████████ would further complicate the dispute by placing the Arbitration parties and/or their

affiliates between two conflicting priorities: the typical openness of U.S. federal courts on the one

hand, and the ███████████████████████████████on the other hand.

**C.    The Interest in Keeping the Arbitration Information Under Seal Outweighs the Presumption of Public Access.**

The promotion of the "voluntary execution of private arbitration agreements—a sound public policy objective" (*Gillette*, C.A. No. 15-1158-LPS-CJB, Slip Op. at 4)—is the primary "countervailing consideration" outweighing the presumption of public access to the Arbitration Information.  In weighing this factor, the Court should balance the public's right to information against the rules applicable to the Arbitration, which in this case strictly require confidentiality regarding the Arbitration Information.  As courts in this District have recognized, the policy of honoring arbitration agreements and encouraging private arbitration weighs in favor of maintaining the confidentiality of related information. *See Gillette*, C.A. No. 15-1158-LPS-CJB, Slip Op. at 4-5 (finding that for redactions directed to the status of pending arbitration, the parties' privacy interests outweigh the importance of disclosure to the public).  "[A]s a general matter, courts tend to keep information relating to arbitration proceedings confidential, particularly because: (1) parties often enter into [arbitration proceedings] to maintain confidentiality; and (2) it promotes the voluntary execution of private arbitration agreements—a sound public policy objective." *Id.* at 5 (internal quotations omitted).

Similarly, in *Mosaid*, Judge Burke explained confidentiality as a point of distinction between arbitration proceedings and courts of law:

> There are other forums—such as arbitration—available if parties wish to protect all of this type of information from public view.  Yet if the Court were to grant Defendants' application to seal all portions of the transcript that make any reference to the terms of the underlying agreements, it would effectively convert itself into an arbitral tribunal, where the presumption is that all materials will be kept confidential and not be disclosed to the public.

*Mosaid*, 878 F. Supp. 2d at 512.  Here, EWE improperly dragged the Arbitration proceedings into this Court on an *ex parte* basis ██████████████████████████████████

████. Thus, the history of this action and the Arbitration support maintaining the confidentiality

14

of this information, not only because of EWE's improper purpose, but also to support the worthwhile goal of promoting private arbitration.

Protection of the Arbitration Information is even more appropriate given the innate tension between § 1782's requirement that its proceedings take place in U.S. District Courts—which are public fora—and the ███████████████████████████████████████ ███████████████ that this Court has agreed is not "a foreign court or quasi-judicial agency." Order at 5.  This is not a typical district court case in which "corporate parties in complex litigation generally prefer to litigate in secret."  *Takeda Pharm. U.S.A., Inc. v. Mylan Pharm., Inc.*, C.A. No. 19-2216-RGA, 2019 WL 6910264, at *1 (D. Del. Dec. 19, 2019).  Here, the ███████████ ████████████████████████████████████████████████████████.

As with the Competitive Information, several of the *Pansy* factors also provide useful guidance in assessing the importance of Halliburton and/or the German Entities' countervailing interests in protecting the Arbitration Information versus the common law presumption of public access.

1.   ***Pansy* Factor 2: EWE's Application Is Directed to an Improper Purpose that Should Not Be Compounded By Public Disclosure of Arbitration Information.[13]**

*Pansy* recognizes that when an "improper purpose" is at issue, sealed filings should not necessarily become public.  Here, EWE never should have instituted this § 1782 discovery proceeding.  As detailed in Halliburton's briefing on the Motion to Vacate, and as acknowledged by the Court, EWE filed this action ████████████████████████████████████████████████ ███████████████████████████.  (Order at 6 ("timing of [EWE's] application suggested attempt to

---

[13] This factor is instructive as to the sealing of Arbitration Information for the same reasons that it is instructive as to the Competitive Information, *see supra* Section I.C.1.

circumvent foreign proof-gathering restrictions")).  ████████████████████████

██████████████████████████████████████████████████████████████████

██████████████ it was making through this § 1782 proceeding.

        Instead, ██████████████████████████████████████████████████

██████████████████████████████████████████—by opening a

second proceeding targeting the German Entities and Halliburton, this time in a U.S. court, with

the attendant risk of full public disclosure.  *See* D.I. 28, Ex. C at Clauses 14 and 19 & Decl. ¶ 10

(██████████████████████████████████████████████████████████

██████████████████████████); section 280 (1) of the German Civil Code & Decl.

¶¶ 11-12 (damages for breach of contract); sections 823 and 826 of the German Civil Code & Decl.

¶¶ 13-15 (tort claims based on breach of confidentiality).  At a minimum, EWE should have ████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████ EWE could have taken all reasonable measures to ensure that, to the greatest

extent possible, there would be no surprise exposure of the Arbitration Information (and Compet-

itive Information).  Instead, EWE proceeded in such a manner that has only heightened the risk to

Halliburton and the German Entities of improper disclosure because of EWE's ill-advised actions.

        **2.**     ***Pansy* Factor 3: Disclosure of Arbitration Information Could Cause
              Embarrassment Leading to Competitive or Financial Harm.[14]**

        Disclosure of the Arbitration Information could result in loss of good will and reputational

---

[14] This factor is also instructive as to the Arbitration Information for the same reasons as the Com-
petitive Information, *see supra* Section I.C.2.

                                          16

harm.  If the Arbitration Information becomes public, then ███████████████████

███ lodged by EWE could result in customers of Halliburton or the German Entities deciding to

use a different supplier, when those customers otherwise would not have been aware of the still-

pending and confidential dispute among the parties to the Arbitration.  For example, ███████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████.  *See* D.I. 3 at 2.  Disclosure

of these assertions by EWE, could also cause reputational (and, ultimately, significant competitive

and financial) damage to the German Entities and, by implication, harm Halliburton Company.

Decl. ¶ 18

> 3.    ***Pansy* Factor 7: The Case Does Not Involve Important Public Issues.**

The Arbitration Information only involves the rights of the Arbitration parties and, by im-

plication, Halliburton.  Neither the discovery sought, █████████████████████████

███, involves matters of legitimate public interest.  While the public may have a general interest

in the outcome of Halliburton's Motion to Vacate, that outcome is now publicly available, and the

public has no interest in being further apprised of ███████████████████████████

████████ in a confidential commercial arbitration proceeding ████████████████████

███████████████████.  And any public interest that could theoretically exist should be

given diminished weight because this case involves private litigants and not public figures.  *Pansy*,

23 F.3d at 788 ("if a case involves private litigants, and concerns matters of little legitimate public

interest, that should be a factor weighing in favor of granting or maintaining an order of confiden-

tiality").  Moreover, while the public may have a general interest in the outcome of this discovery

proceeding, the public has no legitimate interest in the specific terms of the agreements ██████

██████████████████████████████, or any commercially-sensitive information.

*See, e.g.*, *LEAP Sys., Inc. v. MoneyTRAX, Inc.*, 638 F.3d 216, 222 (3d Cir. 2011) (affirming district court's refusal to unseal information regarding terms of a confidential agreement).

Furthermore, the public is able to understand these proceedings and the Court's Order (and subsequent rulings, if any) without the need to review the confidential filings at issue. The substance of the Arbitration is entirely ancillary to this § 1782 discovery proceeding. Similarly, disclosure of the confidential information at ███████████████████████████████████████████ ████████████████—is not necessary for an understanding of whether § 1782 discovery is appropriate. As in *Gillette*, "the redactions at issue . . . would still allow the public to understand the District Court's ruling, as that ruling relates not to the state of the arbitration proceedings, but instead to the threshold issue in this action of whether the parties should be litigating their disputes here in federal court in the first place." *Gillette*, C.A. No. 15-1158-LPS-CJB, Slip Op. at 5.

Halliburton, therefore, submits that the harm to Halliburton and/or the German Entities, as set forth above, attendant with any public disclosure of that information—harm that ███████████ ████████████████████████████—rebuts the presumption of public access attendant with any interest the public may have in viewing the Arbitration Information (and the Competitive Information).

## III. SHOULD THE DOCUMENTS FALL WITHIN THE CARVE-OUT TO THE COMMON LAW PRESUMPTION, THEN HALLIBURTON ALSO MEETS ITS BURDEN UNDER RULE 26

As this Court noted, under *Avandia*, "discovery materials" generally become "judicial records" subject to the common law presumption of public access once filed with the court. Should the Court determine that the documents at issue are judicial records that fall within the carve-out from the common law standard implicitly recognized in *Avandia* and more specifically delineated in *Leucadia*, then Halliburton also meets the standard for protecting the redacted information under the less stringent Rule 26 standard.

More specifically, the Third Circuit has recognized that discovery motions, and materials filed in connection therewith, may be carved-out from the common law presumption of public access. *Leucadia*, 998 F.2d at 164-65.  In that regard, the *Avandia* court noted that the "presumptive right of public access" applies to "pretrial motions of a *nondiscovery* nature."  924 F.3d at 672 (quoting *Cendant*, 260 F.3d at 192-93) (emphasis added).  In *Leucadia,* the Third Circuit expressly declined to attach a public right of access to discovery motions when they are filed merely because discovery, which is traditionally propounded out of the public sphere, had to be "included in motions precipitated by inadequate discovery responses or overly aggressive discovery demands." *Leucadia*, 998 F.2d at 164.  The Third Circuit observed that such a presumption may have an unknown effect "on the discovery process itself."  *Id.*  In fact, "[t]he public policy implications of an expansion of the common law presumption of access to discovery motions are unclear, and this alone should counsel restraint."  *Id.* at 165.

§ 1782 proceedings have oft been analogized by the Third Circuit and other appellate courts to discovery motions or discovery proceedings.  *Bayer AG v. Betachem, Inc*., 173 F.3d 188, 189 n.1 (3d Cir. 1999) (§ 1782 order immediately appealable because *"[o]nly the discovery dispute under 28 U.S.C. § 1782* is occurring in the United States") (emphasis added); *In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83, 85-86 (3d Cir. 2016) (noting that § 1782 "expressly incorporates" the Federal Rules of Civil Procedure and that assessment of its fourth statutory factor, "whether the subpoena includes unduly intrusive or overly burdensome requests," is "virtually identical" to the Federal Rules' "overly burdensome" analysis); *Fuhr v. Credit Suisse AG*, 687 F. App'x 810, 814-15 (11th Cir. 2017) (characterizing denial of motion to vacate § 1782 order as an "order[] granting or denying discovery" and analogizing same to denial of motion to quash subpoena).  Such an analogy is appropriate here where the sole purpose of EWE's § 1782 application

was to obtain discovery.

Should the Court determine that the Third Circuit's longstanding carve out for discovery motions, and materials filed in connection therewith, apply, then the redacted information should be assessed under the Rule 26 standard articulated in *Avandia* and *Leucadia*.   Under that good cause standard, Halliburton has met its burden by demonstrating that the same "countervailing interests" that control the common law inquiry also make clear that Halliburton's interest in maintaining the privacy protections that the ████████████████████ outweighs any public interest.

### CONCLUSION

For the reasons set forth above, Halliburton requests the Court permit (1) the continued sealing of its filings on the docket currently maintained under seal and (2) maintenance of the redactions to the public versions of those under seal filings.

OF COUNSEL:
Robert Meadows
KING & SPALDING
1100 Louisiana St. #4000
Houston, TX 77002
(713) 276-7370
RMeadows@kslaw.com

Elizabeth Silbert
KING & SPALDING
1180 Peachtree St. NE
Atlanta, GA 30309
(404) 572-3570
ESilbert@kslaw.com

Dated: April 14, 2020

YOUNG CONAWAY STARGATT
   & TAYLOR, LLP

*/s/ Anne Shea Gaza*
David C. McBride (No. 408)
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 4999)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
dmcbride@ycst.com
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Respondent*
*Halliburton Company*

26355704.1

## CERTIFICATE OF SERVICE

I, Anne Shea Gaza, hereby certify that on April 21, 2020, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Daniel B. Rath, Esquire
> Rebecca L. Butcher, Esquire
> Matthew R. Pierce, Esquire
> Landis Rath & Cobb LLP
> 919 North Market Street, Suite 1800
> Wilmington, DE 19801
> *rath@lrclaw.com*
> *butcher@lrclaw.com*
> *pierce@lrclaw.com*
>
> *Attorneys for Applicant*
> *EWE GASSPEICHER GmbH*

I further certify that on April 21, 2020**,** I caused the foregoing document to be served via electronic mail upon the above-listed counsel and on the following:

> Timothy P. Harkness, Esquire
> Robert J. McCallum, Esquire
> Olivia P. Greene, Esquire
> Freshfields Bruckhaus Deringer US LLP
> 601 Lexington Avenue, 31st Floor
> New York, NY 10022
> *timothy.harkness@freshfields.com*
> *rob.mccallum@freshfields.com*
> *olivia.greene@freshfields.com*
>
> *Attorneys for Applicant*
> *EWE GASSPEICHER GmbH*

Dated:  April 21, 2020

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

*/s/ Anne Shea Gaza*
David C. McBride (No. 408)
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
*dmcbride@ycst.com*
*agaza@ycst.com*
*swilson@ycst.com*

*Attorneys for Respondent Halliburton
Company*